| | |
|---|---|
| Sean Reed, § <br>               Plaintiff, § <br> § <br> v. § <br> § <br> Experian Information Solutions, Inc.; and § <br> DOES 1 through 100 inclusive, § <br> § <br>               Defendants. § | CASE NO. 5:23-cv-475 |

COMES NOW Plaintiff **SEAN REED** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt.

2. Defendant Experian Information Solutions, Inc. ("Experian") is not reporting Plaintiff's First Citizens' Federal Credit Union ("FCFCU") account accurately as discharged in bankruptcy.

3. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

4. A pervasive and fundamental misunderstanding presently thrives in the United States regarding the long-term impact that filing a consumer bankruptcy has on the consumer's creditworthiness. Specifically, consumers tend to believe that since a bankruptcy can be reported on their credit report for ten (10) years, their creditworthiness will be ruined for the same length of time. This is not true.

5. The *majority* of consumer debtors file a consumer bankruptcy to *raise* their FICO Score and remedy their poor creditworthiness.

6. In fact, it is possible for consumer debtors to obtain a 700 FICO Score as soon as twelve (12) months from filing a consumer bankruptcy (Chapter 7 or Chapter 13).

7. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys the consumer's creditworthiness of ten (10) years; however, to perpetuate this bankruptcy myth, creditors intentionally and routinely ignore both industry standards and FCRA requirements for accurately reporting bankruptcies, as well as the debts included in those bankruptcies, to keep consumers' credit scores low and their interest rates high.

8. Creditors know that deviating from recognized credit reporting standards and FCRA requirements will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

9. This was not the intent of Congress when it enacted the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

10. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

11. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

12. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

13. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each named Defendant conducts sufficient business within the forum state and this Court has personal jurisdiction over Defendants under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

14. Plaintiff alleges that the FCFCU account was included in his Chapter 7 bankruptcy filing in that the debt occurred pre-petition and was subsequently discharged.

15. Plaintiff alleges, that despite the fact the FCFCU account was discharged, Experian is reporting the FCFCU account with a past due payment status, an outstanding balance, a past due amount, and post-discharge payment history; all of which is patently incorrect and misleading.

16. Experian is not reporting the fact the debt was discharged anywhere on the FCFCU tradeline on Plaintiff's credit report. This is patently incorrect and misleading as it appears the debt was not discharged.

17. Plaintiff alleges that it is patently incorrect and misleading for a debt which was discharged to be reported on a credit report with a past due payment status, an outstanding balance, or a past due amount as this reflects the debt is still owed and collectible.

18. The reporting is even more misleading in that it reports derogatory payment history post-discharge which makes the debt appear as if it is still past due and owed.

19. Plaintiff alleges that each and every Defendant is familiar with the FCRA requirements and subscribes thereto.

20. Plaintiff alleges that each and every Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

21. Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair his Credit Score.

22. In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

23. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     FICO, Inc.**

24. FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

25. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions. [1]

---

[1] While there are other credit scoring models, it is well established that FICO Score is by far the most widely used by lenders, employers, insurance companies, and lessors. *See https://www.myfico.com* (a website created and operated by Fair Isaac Corporation ("FICO"), "the company that invented the FICO credit score").

26. A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

27. Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

28. Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

29. There are twenty-eight (28) FICO Scores that are commonly used by lenders.

30. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

31. The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

32. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

33. There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

34. Each of the five (5) factors is weighted differently by FICO.

35. In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

36. Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score. Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

37. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

38. Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

39. FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

40. A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit history, new credit, and credit mix) for each account in a credit report and calculating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." *See* https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports, chances are they either do not understand the tradeline meanings themselves, or, if they do and realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See id*.

41. Some lenders also use internal scoring models. In these instances, the lenders attempt to produce their own "FICO Score" based upon their internal credit scorecard models. These models are, similar to FICO, based upon algorithms, business rules, codes, etc. and take information reported in the credit reports and assign weights to them in order to assess risk and make determinations as to consumer's creditworthiness. FICO Scores and the scores based off internal models being collectively referred to as "Credit Score".

**B.    e-OSCAR**

42. e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

43. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

44. The ACDV contains codes next to certain data fields associated with a credit file.

45. When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

46. When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

47. For clarification, an AUD or other regular transmission is sent when the data furnisher initiates reporting on a consumer's account (e.g., opening an account, updating the account each month, closing an account, etc.), whereas an ACDV is how a data furnisher receives a dispute request from the CRAs and how it updates reporting back to the CRAs after its investigation of the matter.

C. **Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator**

48. When a consumer files bankruptcy, certain credit reporting industry standards exist.

49. Certain data is regularly expected and calculated by FICO when determining a consumer's creditworthiness.

50. The Consumer Information Indicator ("CII") is a critical field that indicates a special condition that applies to a specific consumer.

51. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

52. The CII Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

53. The CII field is a critical field for consumers as it directly relates and impacts a consumer's creditworthiness.

54. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

55. Furthermore, the lack of a CII reported suggests that creditors are free to collect against a consumer as an individual, or that no stay exists to prevent in personam collection activity.

56. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference than if the appropriate CII indicator were reported.

57. The FCRA permits a bankruptcy to be reported for ten (10) years from the date the bankruptcy was filed.

58. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

59. The bankruptcy's impact on a consumer's FICO Score lessens with the passage of time.

60. Accordingly, the failure to reference the bankruptcy filing (CII field) and/or the

correct petition date results in a lower FICO Score, which in turn causes credit decision makers to draw a more negative inference regarding a consumer's creditworthiness.

**D.     Plaintiff's Debt was Discharged Pursuant to his Bankruptcy**

61.     Plaintiff filed a voluntary petition for Chapter 7 bankruptcy on July 29, 2022, in order to repair his creditworthiness and Credit Score.

62.     The Chapter 7 Trustee's Report of No Distribution was entered on August 31, 2022.

63.     Plaintiff's no-asset bankruptcy was discharged on November 1, 2022.

64.     Any debt owed on the FCFCU account was discharged on November 1, 2022.

**E.     Plaintiff's Credit Report Contains an Inaccurate and Adverse Tradeline, which Plaintiff Disputed to no Avail**

65.     On January 17, 2023, Plaintiff ordered an Experian credit report to ensure proper reporting by Plaintiff's creditors (the "January 17 Credit Report").

66.     Plaintiff noticed an adverse tradeline in his January 17 Credit Report, reporting inaccurate, misleading, or incomplete information that did not comply with FCRA standards.

67.     Plaintiff then disputed the inaccurate tradeline regarding the FCFCU account via certified mail to Experian on or about February 2, 2023 (the "Dispute Letter").

68.     Plaintiff's Dispute Letter specifically put Experian on notice that Plaintiff filed for bankruptcy and received a discharge, that the FCFCU account should not be listed with a past due payment status, balance, or past due amount, and that the reporting should be updated.

69.     Plaintiff's Dispute Letter also detailed what was perceived to be problematic about the account, addressing the tradeline individually.

70.     Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the account as required by the FCRA.

71.     Plaintiff is informed and believes that Experian received Plaintiff's Dispute Letter and, in response, failed to send Plaintiff's dispute to FCFCU, as the data furnisher, via an ACDV through e-OSCAR.

72.     On March 20, 2023, Plaintiff ordered a second Experian credit report to determine if his account was updated.

    **a.     Inaccuracy – FCFCU**

73.     Despite actual knowledge, Experian reported Plaintiff's FCFCU account, beginning in 430000xxxx, with a payment status of "Past due 30 days six times or more", an

outstanding balance of "$6,876", a past due amount of "$263", a monthly payment of "$263", a "30" for 30 days late notation in the payment history for December 2022 through February 2023, and without notation of the bankruptcy discharge. This is patently incorrect as this account was discharged in bankruptcy.

74. Plaintiff alleges that Experian did not investigate whether Plaintiff filed for bankruptcy.

75. Experian did not update the tradeline to reflect that Plaintiff obtained a discharge in bankruptcy.

76. Experian failed to provided notice to FCFCU that Plaintiff was disputing the inaccurate and misleading information, and thus it failed to conduct a reasonable investigation of the information as required by the FCRA.

77. Based on Plaintiff's dispute, Experian should have known that Plaintiff received a discharge in his bankruptcy proceedings.

78. The most basic investigation would include a simple review of its reporting in light of the fact that Plaintiff filed a Chapter 7 bankruptcy and received his discharged in order to determine if the reporting complies with the maximum possible accuracy and completeness standard of the FCRA.

79. Plaintiff alleges that Experian did not review any of his bankruptcy documents from PACER or any other source in response to receiving his Dispute Letter.

80. Plaintiff alleges that Experian did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

81. If Experian reviewed such standards, Experian would have seen that its reporting was not in compliance and was therefore patently incorrect or incomplete.

82. By continuing to report Plaintiff's FCFCU account as described in paragraph 73, it incorrectly appears to third parties viewing Plaintiff's credit report that the account was not discharged in bankruptcy, which is inaccurate.

83. Experian should have updated the CII to Code "E" to reflect the debt was discharged in Plaintiff's Chapter 7 bankruptcy, and removed the past due payment status, outstanding balance, past due amount, and post-discharge payment history.

84. The term "past due" means the debt is still owed and may be sent to collections. By

reporting Plaintiff's account as described herein, it appears to third parties viewing Plaintiff's Experian credit report that the account was not discharged in bankruptcy, which is patently incorrect.

85. In addition, this is misleading as the lack of any bankruptcy notations and payment history reporting post-discharge further makes the account appear as if it is still outstanding, past due, and not discharged.

86. As payment history (including payment status) makes up thirty-five percent (35%) of a consumer's FICO Score, and as most lenders approve or deny credit based on a consumer's credit score (as opposed to poring through each tradeline of every account listed to obtain context), the incorrect payment status reported by Experian on the account is lowering Plaintiff's Credit Score, which adversely affects Plaintiff's ability to obtain credit.

87. The lack of investigation and reporting of inaccurate and incomplete information by Experian is unreasonable.

**F.  Damages**

88. Plaintiff pulled the credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

89. As a result of the incorrect reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code, the Fair Credit Reporting Act, and the power of this Court to preserve and perpetuate a fresh start as intended by Congress.

90. Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting by Experian. Further, Plaintiff's diminished creditworthiness, resulting from Experian's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

91. Experian's actions, as alleged herein, are in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

**FIRST CAUSE OF ACTION**

**(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))**

**(Against Defendants and Does 1-100)**

92. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

### A. Experian Failed to Assure Credit Reporting Accuracy

93. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

94. Experian, as part of a prior class action settlement, agreed to proactively report pre-Chapter 7 accounts which were discharged in the consumer's bankruptcy as included in bankruptcy. *See Terri N. White v. Experian Information Solutions, Inc.*, CV 05-1070 DOC (MLGx) (C.D. Cal. Aug. 19, 2008).

95. As a part of the *White* settlement, Experian agreed that it would report pre-bankruptcy tradelines of certain types (revolving, line of credit, open, or indeterminable) in accordance with the "Agreed Bankruptcy Coding." Settlement Order, pgs. 21:24-22:28.

96. The "Agreed Bankruptcy Coding" means these tradelines are to be reported as "discharged" and updated to reflect a zero-balance, or to indicate in some way that no debt is due or owing. Settlement Order, pgs. 6:25-8:9.

97. Experian failed to report the FCFCU account using the procedure it expressly agreed to adopt in *White*.

98. Had Experian maintained reasonable procedures to assure maximum accuracy, it would have never reported the FCFCU account as described herein.

99. Experian knew, or should have known, (1) that the FCFCU account was included and discharged in bankruptcy, and (2) that the account should not have been reported with a payment status of past due, an outstanding balance, or past due amount, as the debt was discharged in bankruptcy. In addition, Experian knows discharged debts are not supposed to report after discharge, including payment history. Further, Experian knew, or should have known, that this inaccurate and incomplete tradeline does not reflect *maximum possible accuracy and completeness* as required by the FCRA.

100. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's creditworthiness, credit standing, credit capacity, character and general reputation as a consumer are all damaged by the inaccurate reporting Experian allowed.

101. As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit and other mental and emotional distress.

**B.     Willful Violations**

102. Experian's violations, as described herein, were willful; specifically, Experian has intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

103. Experian regularly, as a policy, ignores disputes by consumers and fails to perform even a basic investigation regarding the disputes. Additionally, Experian regularly fails to forward disputes to data furnishers, thereby frustrating the entire dispute process.

104. To the extent Experian does send consumer disputes, it sends these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

105. Experian's employees receive little to no training concerning how to accurately report consumer debt.

106. Instead, Experian's employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

107. Experian's employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

108. Experian has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

109. As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

110. Experian's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

111. In the alternative, Experian was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

112. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. §1681i(a)(1))

### (Against Defendants and Does 1-100)

113. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.     Experian Failed to Reinvestigate Following Plaintiff's Dispute**

114. Pursuant to 15 U.S.C. § 1681i(a)(1), Experian was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the FCFCU account.

115. Thus, Experian failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

116. Experian is not a passive entity bound to report whatever information a data furnisher provides.

117. Plaintiff alleges Experian is readily familiar with FCRA requirements and credit reporting industry standards.

118. Based on the foregoing, Plaintiff alleges that Experian can, and does, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

119. Experian can and does instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

120. Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that it was not reporting the FCFCU account at issue correctly.

121. Had Experian conducted a proper investigation, it could have updated the FCFCU account by adding a notation on the tradeline that the debt was in fact included and discharged in Plaintiff's Chapter 7, removed the charge off payment status, outstanding account balance, past due amount, and post-discharge payment history. However, Experian continued to report the account as described herein.

122. Experian, therefore, did not conduct even the most basic investigation regarding credit reporting industry standards, otherwise the aforementioned would have been uncovered.

123. Further, Plaintiff alleges that Experian failed to send an ACDV to FCFCU to confirm accurate reporting on its account. Despite receiving the Dispute Letter providing notice of the inaccuracies, Experian did not delete or correct the tradeline or conduct an investigation.

124. The failure by Experian to investigate was a violation of the FCRA.

125. In the alternative, if Experian deemed Plaintiff's Dispute Letter "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), Experian failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received no such notice from Experian, Plaintiff alleges Experian deemed her Dispute Letter valid, and thus triggered its obligations under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which it did not comply.

## THIRD CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))

### (Against Defendants and Does 1-100)

126. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A. Experian Failed to Review and Consider all Relevant Information**

127. Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

128. Experian's violations of 15 U.S.C. § 1681i(a)(4) have caused Plaintiff to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B. Willful Violations**

129. Experian's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

130. In the alternative, Experian was negligent in failing to review and consider all relevant information Plaintiff submitted, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

131. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
## (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
## (Against Defendants and Does 1-100)

132. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   Experian Failed to Delete Disputed and Inaccurate Information**

133. Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

134. Experian's violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.   Willful Violations**

135. Experian's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

136. In the alternative, Experian was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

137. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

138. WHEREFORE, Plaintiff prays for judgment as follows:

   a. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
   b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
   c. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
   d. Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;
   e. For determination by the Court that Defendant's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq*.; and

f. For determination by the Court that Defendant's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: April 18, 2023

*/s/ Joshua B. Lane*
Joshua B. Lane
Texas Bar No. 24092665
P.O. Box 558
Spring Branch, TX 78070
210-541-2154 ph
210-783-1383 fax
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

Dated: April 18, 2023 /s/ *Joshua B. Lane*
Joshua B. Lane